AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Case No. 1:15-MJ-297CFH |
| SHANE ROBERT SMITH, a/k/a Robert Smith, | ) |
| Defendant. | ) |

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 07 2015
AT _____ O'CLOCK _____
Lawrence K. Baerman, Clerk - Albany

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 7, 2015, in the county of Washington in the Northern District of New York, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a machinegun |

This criminal complaint is based on these facts:

☒  Continued on the attached sheet.

_____
Complainant's signature
NYSP Inv. Matthew R. Gilbert, JTTF Task Force Officer
Printed name and title

Sworn to before me and signed in my presence.

Date: August 7, 2015

_____
Judge's signature

City and State:  Albany, New York

Hon. Christian F. Hummel, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No.  1:15-MJ-297 CFH |
| | ) |
| v. | ) |
| | ) |
| SHANE ROBERT SMITH, | ) |
| a/k/a Robert Smith, | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew R. Gilbert, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am an Investigator with the Bureau of Criminal Investigation of the New York State Police ("NYSP"), and I have been continuously employed with NYSP since April 30, 1997. Currently, I am assigned to the Special Investigations Unit ("SIU") in Albany, New York. I am also assigned to the Federal Bureau of Investigation's ("FBI's") Joint Terrorism Task Force ("JTTF"), Albany, New York Field Office, as a Task Force Officer (TFO), where I have served since July 2012. During the past 18 years with the New York State Police and the past three years with the JTTF, I have participated in the investigation of multiple cases involving the illegal possession and sale of firearms, the illegal possession of explosive devices, hate crimes, hate groups, and domestic terrorism, as well as many other crimes.

2.  I have been personally involved in the investigation of this matter along with FBI Special Agents, members of the JTTF, and others. I am familiar with the facts and circumstances set forth below from my participation in the investigation of this matter, from my personal knowledge, and from my conversations with other law enforcement officers involved in this investigation. Because this affidavit is being submitted for the limited purpose of

establishing probable cause, I have not included every fact I have learned during the investigation. Where the actions, statements, and conversations of others are recounted herein, they are related in substance and in part, unless otherwise indicated.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(o), Possession of a Machinegun, have been committed by **SHANE ROBERT SMITH** of Whitehall, New York.

## STATUTORY BACKGROUND

4. Title 18, United States Code, Section 922(o) provides in pertinent part that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). A "machinegun" is defined as

> [a]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in possession or under the control of a person.

26 U.S.C. § 5845(b). *See* 18 U.S.C. 921(a)(23). A knowing violation of Section § 922(o) is punishable by up to ten years imprisonment. 18 U.S.C. § 924(a)(2).

## PROBABLE CAUSE

5. Beginning in or around May 2014, **SHANE ROBERT SMITH** repeatedly expressed an interest in purchasing firearms and ammunition, including fully automatic weapons. On May 17, 2014, **SMITH** sent an e-mail message to a Switzerland-based Bitmessage account placing an order for "one m4 carbine" and providing his home address in Whitehall, New York

as the shipping address. An M4 Carbine is an assault rifle capable of firing as both a semiautomatic and as a machinegun discharging three-round bursts with a single trigger pull.

6. From no later than October 22, 2014 to August 6, 2015, **SMITH** maintained one or more accounts with VK, a Russian social media platform similar to Facebook. As of on or about October 22, 2014, **SMITH** listed his interests on his VK profile page as "guns, gun smithing, building bombs, knives, guerilla warfare, preserving my race and folk, and destroying the government."

7. Prior to January 9, 2015, **SMITH**, told an inmate at the Washington County Jail about a location in Whitehall, New York that **SMITH** used as a firing range. **SMITH** said that he had access to body armor, gas masks, and fully automatic assault rifles that he fired at that location, including AK-47s and AR-15s. **SMITH** sought to recruit the inmate to join him in stealing firearms from Kelly's Guns and Ammo in Granville, New York.

8. On January 12, 2015, **SMITH** again sent a message to the Switzerland-based Bitmessage address stating that he had "military issue body armor, mag pouch's gas mask's, and filters, ballistic vests, and Kevlar helmets and more," and that he would like to "trade [] my goods for some of yours."

9. On January 27, 2015, probation officers from the Washington County Probation Office conducted a visit to **SMITH's** residence in Whitehall, New York as a result of social media postings by **SMITH** in which he indicated he was seeking to purchase ammunition. During a consent search of **SMITH's** residence, probation officers identified two body armor kits with heavy plates, one combat helmet, one hatchet, and multiple flechette rounds (a form of dart used in World War II).

10. On or about April 29, 2015, **SMITH** contacted another VK user via VK's private messaging function and stated that he needed "a favor from someone" and that the other user "may be able to help" because he was "looking for something," namely "a m10." The other VK user responded, "The WW2 Tank? The AK copy?" **SMITH** replied that, while the tank would "be nice . . . lol," he was looking for "a Ingram's Mac not the original like the civilian one." The other VK user replied, "Ohhh Mac 10. I don't have a spare Mac 10 handy." On that same day, **SMITH** ordered a book titled "FULL AUTO Volume Three: Semi-Auto MAC 10 Modification Manual" from Keepshooting.com for delivery to his home address in Whitehall, New York. The subject of the book is how to convert semi-automatic MAC 10s to (illegal) fully automatic MAC 10s.

11. After observing **SMITH**'s post on VK, a retired law enforcement officer who is working with the FBI as a compensated confidential human source (the "CHS") initiated contact with **SMITH** via VK. During the initial contact on May 1, 2015, the CHS told **SMITH** that "people are neverous [sic] about you. are you asking folks to buy you a Mac10?" **SMITH** replied "No, I'm trying to buy one I'm not a snitch I'm the real deal I only asked for help I dont want anybody in trouble." The CHS provided **SMITH** with his e-mail address.

12. That same day, **SMITH** contacted the CHS via e-mail. The CHS asked "what exactly what you want." **SMITH** responded "I need a simple Mac 10 nothing fancy civi legal one and I can do a trade and some cash just lmk." In response to CHS questions about what he was going to use the gun for, **SMITH** stated that "what I'm doing is gonna rock and roll it and I have a suppressor for a mac 10 I fabbed in my shop but its gonna be used to execute kikes, coons, and get money for the crew." **SMITH** said he had "only like 6 guys" in his group, and confirmed that they were looking for firearms too. With respect to the firearm he was seeking,

he said, "it can be a tech 9, Mac 11 or kg 99 . . . I'd prefer Mac 10 or 11 but up to u what u can get."

13. I know from my training and experience that "rock and roll" refers to fully automatic firearms, and I understand the phrase "rock and roll it" in this context to mean the use or conversion of a semi-automatic firearm into a fully automatic firearm.

14. On May 1, 2015, **SMITH** ordered three books from FTFIndustries.com for delivery to his home address. These books were titled "MAC-10 Cookbook," "Suppressors Volume 5: Ingram Mac 10 11 Silencer Book," and "Full Auto Volume Eight: M-15 and Mini-15 Modification Manual." The subject of the "MAC-10 Cookbook" is listed on the FTF Industries website as "[e]verything you always wanted to know about the MAC-10 but were afraid to ask!" The subject of the "Suppressors Volume 5: Ingram Mac 10 11 Silencer Book" is the construction and manufacturing of suppressors/silencers for the Mac 10 and Mac 11 firearms. The subject of "Full Auto Volume Eight" is how to convert these firearms to fully automatic weapons, and the FTF Industries web page for this book includes the following warning: "Please note: Civilians can no longer do Form 1 conversions on anything pertaining to machine guns. For civilian consumption, this together with all our conversion books, is intended for academic purposes only. To do otherwise would be in violation of the Federal Law!"

15. The next day, **SMITH** contacted the CHS and said "Bro I may have another order after we settle this one cause I just came into some money but I'll keep u posted."

16. On May 3, 2015, **SMITH** stated that the others in his group were aged in their "20's 30's and 40's" and that one "wants a mini 15 but the others idk." On May 4, 2015 **SMITH** stated that he remembered the firearm he was looking for was an M16 A2 with a fixed carry handle. I know the M16 A2 to be designed to fire as a machinegun.

17. On May 4, 2015, in response to questioning from the CHS about his ideology and plans, **SMITH** described himself to the CHS as "a violent type person" with "exceptional markmanshiip [sic] skill" from having been on a shooting team, and stated that "I have a lot of knowledge in explosives and guerilla warfare." He stated that "I love violence" and described himself as impatient and wanting to act.

18. On May 6, 2015, **SMITH** e-mailed the CHS a photograph of what he identified as the homemade Mac 10 suppressor that he had previously discussed making. During this exchange, **SMITH** expressed an interest in acquiring an "extra mag high capacity and some jacketed hollow point ammo and . . . an old style Mac suppressor."

19. In a May 9, 2015 e-mail exchange, **SMITH** asked the CHS if he could get "boomers" too. The CHS said "if you are asking what I think you are asking for, write a letter, nothing on the internet or by cell phone." **SMITH** subsequently indicated that he had sent a letter detailing additional items he was seeking, stating that "the letter i sent the items in there are not needed right away but will be my next order bro." On or about May 19, 2015, the CHS received from **SMITH** via United States Mail a handwritten list constituting **SMITH**'s next order, including: (1) an M16 A1 Military Assault Rifle, (2) 400 rounds of M855 Green Tip Penetrator Ammunition, (3) a Silver Beretta 92 FS 9mm handgun, (4) 200 rounds of jacketed hollow point 9 mm ammunition, and (5) "boomers," about which **SMITH** explained "by 'boomers' I mean explosives as in c4 or grenades."

20. Beginning on or about May 13, 2015, **SMITH** and the CHS discussed arrangements for purchase and delivery of some of the foregoing items. **SMITH** stated he could meet in Albany, Troy, or Binghamton to complete the transaction.

21. On July 9, 2015, **SMITH** asked "[h]ow much would a hand grenade set me back?"

22. On July 18, 2015, **SMITH** sent a text message to the CHS with a photograph of a .22-caliber 702 Mossberg Plinkster semi-automatic rifle with a 25-round magazine that **SMITH** "just did up [last] night." The CHS asked "[i]f you have that gun why you need a new 'purchase'?" **SMITH** responded: "1 need a lil more knock down power, 2 hard to find ammo, 3 to mall [sic]."

23. On July 19, 2015, **SMITH** said he had a list of supplies, including a "92fs Beretta, mini 14 or m16, mac 10 and Mac 10 suppressor. And green tip 556 ammo." The CHS asked "You building your own army?" **SMITH** responded "Well like a hit squad but if we get corned [sic] you'll need a side arm or heavy weapon." On July 20, 2015, **SMITH** texted the CHS to ask if M16 A1s or A2s were "still around" because "I was looking to pick up one for the list instead of a mini 14." **SMITH** also stated that he had diamonds he could pawn or trade for guns.

24. Based on the foregoing discussions, the CHS indicated that he could sell **SMITH** the following items: (1) a MAC 10 machinegun; (2) a suppressor for the MAC 10, (3) an M16 model A2 machinegun, (4) five grenades, (5) a Beretta model 92FS pistol, and (6) "Green-Tip Ammo." On or about July 23, 2015, **SMITH** agreed to purchase these items for $200.00 and some diamonds.

25. **SMITH** arranged to meet with an undercover FBI agent (the "UC") who was posing as the CHS's representative on July 29, 2015 to complete the transaction. In advance of the meeting, **SMITH** and the UC exchanged text messages about the arrangements for an in-person meeting in Stillwater, New York.

26.     Before the meeting, **SMITH** messaged the CHS on VK and expressed "nervousness," stating "I'm not gonna get busted by the feds when I meet [the UC] tonight . . . I'm worried about that brother."

27.     On July 29, 2015, **SMITH** traveled to Stillwater, New York and met with the UC. During this meeting, the UC and **SMITH** discussed their desire to avoid going to jail. The UC emphasized that he was delivering fully automatic weapons that were illegal, and **SMITH** indicated an understanding of this fact. The UC told **SMITH** that he had to be careful where he put this stuff, and that this was "some serious hardware," that it was fully automatic, and that that alone was "crazy time." **SMITH** indicated that he understood and stated that Probation was watching his house, so he would make alternative arrangements for storing the weapons. At the conclusion of this meeting, they agreed to complete the transaction at the UC's hotel in Albany, New York. Also during this meeting, the UC asked **SMITH** what he was going to do with the firearms. **SMITH** indicated that he and the CHS had plans and "were working on some things." **SMITH** stated that the CHS was the one that thought of the plans.

28.     After the July 29, 2015 meeting, **SMITH** texted the UC to say he was unable to get a ride to Albany to complete the transaction. He proposed making plans for a future transaction when the UC traveled back through Albany. **SMITH** suggested several locations in New York for the purchase, including Mechanicsville, Stillwater, Schuylerville, or Whitehall, ultimately focusing on Whitehall.

29.     On July 31, 2015 and August 1, 2015, **SMITH** messaged the CHS on VK, said he had met the UC and described him as a "[v]ery solid brother," and said "he's gonna meet me in Whitehall on his way back through."

30. On August 3, 2015, **SMITH** messaged the CHS on VK to ask whether "the gadgets" would be "hard to handle on rock and roll," and then stated "I guess I'll find out soon lol."

31. In subsequent text messages, **SMITH** and the UC coordinated a meeting place chosen by **SMITH** in Whitehall, New York.

32. On August 6, 2015, **SMITH** took possession of the following items from the UC: (1) One Military Armament Corporation MAC 10 machinegun, bearing serial number 1-3003144; (2) One suppressor for the Military Armament Corporation MAC 10, bearing serial number S1-3001354; (3) One Colt M16 model A2 machinegun, bearing serial number 8001114; (4) One Beretta model 92FS, bearing serial number BER4245882; and (5) 120 rounds of Green Tip ammunition in pouch ID # 03/10HMG. Prior to the transaction, the firearms were modified so that they could not immediately be fired before being recovered by law enforcement.

33. The M16 model A2 bearing serial number 8001114 is a machinegun because it is designed to shoot and can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

34. The MAC 10 bearing serial number S1-3001354 is a machinegun because it is designed to shoot and can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

35. On August 6, 2015, **SMITH** was arrested at or around 11:00 p.m. At approximately 11:15 p.m., after acknowledging and waiving his Miranda rights, **SMITH** stated that he was aware he was in possession of an M16 and a MAC 10 with automatic firing capabilities.

## CONCLUSION

36. Based on the foregoing, I respectfully submit that probable cause exists to believe that **SHANE ROBERT SMITH** has committed violations of Title 18, United States Code, Section 922(o).

37. WHEREFORE, I respectfully request that the Court issue a complaint charging **SHANE ROBERT SMITH** with a violation of Title 18, United States Code, Section 922(o).

Respectfully submitted,

*[signature]*

Matthew R. Gilbert
NYSP Special Investigations Unit
Joint Terrorism Task Force (JTTF)
FBI Albany

Subscribed and sworn to before me
On August 7, 2015:

*[signature]*

Hon. Christian F. Hummel
United States Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, New York 12207